Borenstein, J.
The plaintiff, John A. Femino, alleges in his amended complaint, brought under G.L.c. 15IB, §9, that defendants Data Technology, Inc. (“Data Tech”) and Wayne Heath (“Heath”) unlawfully discriminated against him at his place of employment on the basis of a disability or handicap.[2], [3] Both defendants now move for summary judgment. Heath individually argues that plaintiffs failure to name him in plaintiff s initial filing with the Massachusetts Commission Against Discrimination (“MCAD”) bars suit against him in this court.[4] Both defendants argue that plaintiff has not come forward with a sufficient showing to establish triable issues as to certain essential elements of the plaintiffs claim for handicap discrimination.[5]-Based on an examination of the record and arguments at hearing in November 23, 1999, for the reasons set forth below, the defendants’ motion for summary judgment is DENIED.
BACKGROUND
The following facts are undisputed unless otherwise noted.
Plaintiff worked for Data Tech as a machinist from 1991 until September 29, 1995. At all relevant times Heath was plaintiffs immediate supervisor. Prior to beginning employment with Data Tech, plaintiff had suffered from depression. Plaintiff claims he was diagnosed, possibly in 1988, with borderline personality disorder, and for purposes of this motion only Data Tech does not dispute that he suffers from both depression and borderline personality disorder. The parties dispute whether plaintiffs mental impairment substantially limits his ability to think, remember and concentrate.
Defendants were aware that plaintiff had mental health problems. Data Tech kept a personnel file on plaintiff that included a medical report from one of his treating physicians noting in his medical history that he was hospitalized at one time for mental illness and was on Prozac for depression. Data Tech employees Patricia Clancy, Wayne Heath and General Manager Willaim Staniewicz all had access to the personnel file, and Clancy acknowledges having read this report. Plaintiff informed Heath sometime in 1994 that plaintiff was “mentally ill,” and claims that Heath had seen him cry on at least one occasion. During the course of plaintiffs employment, Data Tech and Heath permitted him, upon request, to leave work early to attend counseling.
Plaintiff claims that Heath regularly taunted him at work for being mentally ill and that Heath both tolerated and encouraged other workers to engage in similar conduct. Plaintiff claims that the distress from this alleged abusive conduct often caused him to leave work early and that his complaints to Heath’s supervisor, William Staniewicz, were ignored. He also claims that Heath’s conduct toward him became the subject of his counseling sessions. Sometime in July or August 1995, Plaintiff complained to Vice President George Bruschi of Heath’s alleged behavior. A dispute exists as to whether Bruschi handled plaintiffs complaint in a satisfactory manner.
On September 27, 1995, plaintiff and Heath had a dispute over the proper use of a blower system. The parties disagree as to the events that prompted plaintiff to leave early that day and on the next two days of the continuing dispute between he and Heath. The parties also dispute whether plaintiff quit of his own accord or whether he was fired on September 29, 1995; and if he was fired, whether it was for a legitimate reason or in retaliation for plaintiffs having complained about Heath’s alleged abusive behavior toward him. Plaintiff also claims that Data Tech’s firing of plaintiff on September 29, 1999 without following up with a promised mediation session was a failure to accommodate and therefore unlawful discrimination. There is no dispute that Data Tech had permitted another employee outside plaintiffs protected class to be absent from work without permission for as long as a week before being fired.
*274 Data Tech did not replace plaintiff with a new employee. Rather, it divided plaintiffs tasks among other employees.
On or about January 26, 1996, plaintiff filled out a form, otherwise known as a complaint, with MCAD in which he named Data Tech in the section providing for claimants to name an “employer, labor organization, employment agency, apprenticeship committee, state or local government agency” that caused the alleged discriminatory act. In the section labeled “Particulars,” the plaintiff stated, among other things, that “Mr. Wayne Heath” was his immediate supervisor at Data Tech, that Heath was satisfied with his work performance, that Heath had referred to him as “mentally ill” on a prior occasion, that it was Heath’s “harassment” the day he was “terminated” that led him to complain, without satisfactory result, to “Human Resources.” He concludes with an allegation that his “termination was based on the perception that I am mentally disabled and therefore was unlawful.”
Plaintiff subsequently filed the complaint with MCAD on February 1, 1996. On or about February 26, 1996, Data Tech received notice of the charge and the scheduled June 5, 1996 investigative conference. On or about March 28, 1996, plaintiff filed an amended complaint in which he added Wayne Heath in the “named” section of the form.[6] There is no dispute that neither Heath nor Data Tech received notice of the amended complaint until June 12, 1996 when plaintiffs counsel faxed a copy to Data Tech’s counsel upon realizing that MCAD had not served notice of the amended complaint. In his cover letter, counsel informed Data Tech that Mr. Bowne, an MCAD investigator, would allow time for response. Data Tech was present at the June 5, 1996 conference. Heath did not attend. Heath acknowledges, however, that sometime in late 1996 or early 1997, he knew that he was the subject of plaintiffs complaint and asked co-worker Patricia Clancy for and received a copy of it.[7] Heath answered neither the original nor the amended complaint, and at no time did he offer to conciliate.
On or about May 22, 1998, plaintiff filed this suit and withdrew its claim from MCAD on or about June 5, 1998 with no determination of defendants’ liability having been made.
DISCUSSION
A motion for summary judgment shall be granted where there are no disputed issues of material fact and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating absence of a triable issue and entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that proof of that element is unlikely to be forthcoming at trial. Flesner v. Technical Comm. Corp., 410 Mass. 805, 809 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” Pederson, 404 Mass. at 17.
Plaintiffs Failure to Name Heath in the MCAD Complaint
The general rule is that before an action may be brought in Superior Court for a violation of c. 151B, a plaintiff must first file a complaint with MCAD that, among other things, identifies by name persons alleged to have committed the discriminatory act. G.L.c. 151B, §5; 804 Code Mass. Regs. §1.03(4)(a). See King v. First, 46 Mass.App.Ct. 372, 373-74 (1999), citing Powers v. H.B. Smith Company, Inc., 42 Mass.App.Ct. 657, 667 (1997). No Massachusetts appellate court to date has determined whether exceptions apply to this rule, although the Appeals Court has assumed, without deciding, that federal cases interpreting analogous federal statutes provide guidance on this very issue. King, supra at 375. For this reason, this court looks to federal law for applicable exceptions, and considers whether under the circumstances of this case the statutory objectives of notice of the charges and opportunity to conciliate have been met. See King, supra at 375.
The court concludes that plaintiff put Heath’s conduct at issue and that he had adequate notice and opportunity to conciliate while the MCAD charge was still pending. There is no dispute that although Heath was not specifically “named” in the third section of the MCAD complaint, his conduct was nonetheless put into issue in the body of the complaint. Within the section entitled “Particulars” plaintiff identified “Mr. Wayne Heath” as his immediate supervisor and the person employed by Data Tech who allegedly harassed him and caused his wrongful termination due to a “perception that [plaintiff is] mentally disabled.” Thus the plaintiffs description of Heath’s alleged discriminatory conduct within the body of the complaint, when read as a whole, is sufficient to put such conduct at issue and give him notice of the nature of the charges against him.[8] See e.g. Chapin v. University of Massachusetts at Lowell, 977 F.Sup. 72, 76-77 (D.Mass 1997) (plaintiffs identification of “management or other officials overseeing the Police Department” was adequate to put the chief of police’s conduct at issue); Chatman, 973 F.Sup. at 232-34 (plaintiffs identification of the “supervisors/partners” of the company, along with detailed allegations of their conduct, was enough to put their conduct at issue).
As to actual notice and opportunity to conciliate before the case was dismissed in 1998, the record indicates that Heath first laid eyes upon plaintiffs MCAD complaint sometime in late 1996 or early 1997 *275 after asking Patricia Clancy for it. He had heard that it pertained to him and that there was a lot of discussion about it. Heath does not dispute that on June 12, 1996 plaintiffs attorney faxed defendants’ attorney a copy of plaintiffs March 28, 1996 amendment adding his name to the charge and indicating that MCAD would allow them time to respond to the amended allegations. The facts here are thus distinguishable from those in Powers v. H.B. Smith, 42 Mass.App.Ct. 657 (1997), a summary judgment case in which the Appeals Court noted that “(t]he plaintiff could have moved to amend his MCAD complaint” to add the individual as a respondent, but, unlike here, “failed to do so.” Powers, supra at 667. Because plaintiff amended his complaint adding Heath on March 28, 1996 and Heath had actual notice by early 1997 at the latest, long before May 22, 1998, when plaintiff filed suit in this court, Heath had ample opportunity to conciliate from that time forward through the last two years the investigation remained open. In sum, because Heath’s alleged discriminatory conduct was at issue in the body of plaintiff s complaint, and he had adequate notice and opportunity to conciliate, Heath’s motion for summary judgment on this basis is denied.
The c. 15 IB Claim[9]
This court concludes that none of the issues raised by defendants are capable of resolution by summary judgment as there are numerous material factual disputes relative to certain elements of plaintiff s claim based upon defendants’ alleged unlawful termination due to disability or handicap in violation of G.L.c. 151B, §4(16) (1990).[10]
The prima facie standard of unlawful employment discrimination on the basis of handicap is set forth in Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 3 (1998). “[A] plaintiff must present credible evidence that (1) he is handicapped within the meaning of the statute; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; (3) he was terminated or otherwise subject to an adverse action by his employer; and (4) the position he had occupied remained open and the employer sought to fill it.” Id. The plaintiff need not show he was terminated “solely” because of his handicap, Dartt, supra at 7. The plaintiff also need not demonstrate that his replacement was not handicapped. Dartt, supra at 11 n. 17. The term “handicap” as used in c. 15 IB means “(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment.” G.L.c. 151B, §1(17). Dartt, supra at 15.
Defendants first argue that because plaintiff, by his own admission, does not dispute that his mental impairment did not restrict his ability to work, his mental impairment fails to meet the definition of “handicap” under c. 151B,§l(17).As plaintiff correctly points out, the purported admission, statements made by plaintiff at his March 10, 1999 deposition, do not support this argument. In the context of questioning the plaintiff about physical restrictions not at issue here, plaintiff was asked if there were “any other current restrictions by any physician that you are aware of that would prevent you from working.” (See Plaintiffs Dep. at 43-44, attached as Exh. A to Defendants’ Memorandum of Law in Support of their Motion for Summary Judgment.) In response, plaintiff answered, “Nothing that I can think of.” Not only is plaintiffs response less than definitive, given the context of the question and the reference to his “current” status as of the date of his deposition and reading it in the light most favorable to him, it is reasonable to interpret this questioning as not requiring a response about any restrictions related to his mental impairment on the dates relevant to this case. Similarly, although in answer to a question about how his mental impairment limits him he stated that he “[didn’t] believe it limits [his] work performance,” he also stated in the same response and elsewhere in the record that his handicap affects his ability at work to handle stressful situations, to concentrate, and to remember. (See Exh. A at 102; Plaintiffs Answers to Interrogatories, No. 3, attached as Exh. C.) Inconsistencies, if any, in plaintiffs testimony go to his credibility, an issue reserved for the fact finder. See Noble v. Goodyear Tire and Rubber Co., Inc., 34 Mass.App.Ct. 397, 403 (1993), rev. den., 415 Mass. 1105.
Next, defendants argue that the mere fact that Data Tech allowed plaintiff to leave early to attend counseling, and the presence of a report in a personnel file are insufficient to prove knowledge of plaintiffs handicap. The record reflects, however, sufficient credible material facts in dispute as to defendants’ knowledge so as to preclude summary judgment on this basis. Plaintiff has come forward with credible evidence that defendants knew that he had general mental health problems, was on Prozac, a medication commonly known to be prescribed for mental conditions, and admittedly were aware of his counseling sessions. See, e.g., Petsch-Schmid v. Boston Edison Co., 91 F.Sup. 697 (D.Mass. 1996) (no requirement that employer know exact nature of employee’s impairment to be found to have discriminated in violation of c. 15 IB). In addition to defendants’ knowledge of plaintiffs counseling sessions and the existence of the medical report, at least one agent of Data Tech, if not more, had access to that report and read it. Additionally, there is a dispute as to whether defendant told Heath and Vice President Brusehi of his mental illness, and evidence of disputed incidents of plaintiff crying on one occasion and leaving work early due to distress at other times. Plaintiff has thus met his summary judgment burden on this issue.
Defendants’ remaining arguments, that plaintiff was unable to perform essential functions of the job, with or without accommodation, and that they did not *276 replace him, lack merit and are unsupported by the record before this court. Specifically, defendants point to no undisputed facts in the record to indicate that plaintiff was a problematic employee or that he knowingly “failed to comply with company policy regarding hours of employment.” Finally, the record indicates that other employees took over plaintiffs job after he was gone.
ORDER
After hearing, for the reasons discussed above, defendants Data Technology, Inc. and Wayne Heath’s motion for summary judgment is DENIED.

 The Court apologizes to the parties and counsel for the delay in the issuance of this decision, which was solely my responsibility. The delay in no way is attributable to anything counsel or the parties did or did not do.

 By stipulation of the parties, filed with this court on October 14, 1999, plaintiffs claim of alleged sexual harassment against defendants was dismissed with prejudice. Consequently, this decision addresses none of the parties’ arguments as they relate to that claim.

 On July 23, 1998, this court (Fabricant, J.), denied without prejudice defendants’ motion to dismiss on this identical basis, stating that the record was insufficiently developed to resolve the issue at that time.

 defendants also argue that the workers’ compensation statute bars plaintiffs claim for emotional distress. Because this court concludes, after a fair reading of the amended complaint, that plaintiff alleges no separate count for the infliction of emotional distress, the latter argument is not addressed in this opinion.

 Plaintiff also added new claims to the handicap discrimination claim that, by agreement of the parties, sire no longer at issue.

 This court cannot determine from the record whether Heath received the original, amended, or both complaints at that time. As the court, for the reasons set forth below, concludes that Heath’s receipt of either copy was sufficient notice of plaintiffs charges of handicap discrimination against him, any dispute as to which one he received is immaterial.

 This court notes that it makes little sense to penalize an MCAD claimant solely for his failure to literally “name” an individual in a particular section of a form that limits his choices to an “employer, labor organization, employment agency, apprenticeship committee, state or local government agency,” none of which apply to Heath.

 A liberal reading of plaintiffs complaint and plaintiffs submissions in opposition to this motion, indicates three theories of liablity; 1) a hostile work environment caused by Heath’s alleged disability based harassment of the plaintiff and Data Tech’s alleged unlawful tolerance thereof: 2) defendants’ alleged wrongful termination of plaintiff in retaliation for his complaining about the alleged harassment; and 3) defendants’ alleged wrongful termination because of plaintiffs handicap. In their motion, defendants principally argue the absence of triable issues under this last theory of liability. This court, therefore, limits its discussion to that argument.

 G.L.c. 151B, §4(16) as added by St. 1983, c. 553 provides, in relevant part:
It shall be an unlawful practice . . . For any employer, personally or through an agent, to dismiss- from employment ... or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer’s business.